# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL ACTION NO. 1:20-CV-00172-DCK

| | |
|---|---|
| GREGORY HITT, | ) |
|           **Plaintiff,** | ) |
| | ) **ORDER** |
|   v. | ) |
| | ) |
| ANDREW SAUL, | ) |
|   **Commissioner of Social Security,** | ) |
| | ) |
|           **Defendant.** | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 16) and "Defendant's Motion For Summary Judgment" (Document No. 20). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, applicable authority, and testimony from the hearing, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. BACKGROUND

Plaintiff Gregory Hitt ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On or about September 28, 2018, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, <u>and</u> for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning August 6, 2017. (Transcript

of the Record of Proceedings ("Tr.") 15, 198, 200).  The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on February 18, 2019, and again after reconsideration on June 3, 2019.  (Tr. 15, 102, 107, 122, 126, 130).  In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling.  We do not have sufficient vocational information to determine whether you can perform any of your past relevant work.  However, based on the evidence in the file, we have determined that you can adjust to other work.  It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 126, 130).

Plaintiff filed a timely written request for a hearing on July 19, 2019. (Tr. 15, 40).  On January 16, 2020, Plaintiff appeared and testified at a hearing before Administrative Law Judge John A. Pottinger (the "ALJ").  (Tr. 15, 32-55).  In addition, Courtney Stiles, a vocational expert ("VE"), and Michelle Pritchard, Plaintiff's attorney, appeared at the hearing.  Id.

The ALJ issued an unfavorable decision on January 31, 2020, denying Plaintiff's claim. (Tr. 15-26).  On March 18, 2020, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on May 4, 2020.  (Tr. 1-6, 196).  The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request.  (Tr. 1-6).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on July 6, 2020.  (Document No. 1).  On August 17, 2020, the undersigned was assigned to this case as the referral Magistrate Judge.  The parties consented to Magistrate Judge jurisdiction

on December 18, 2020, and this case was reassigned to the undersigned as presiding judge. (Document No. 13).

Plaintiff's "Motion for Summary Judgment" (Document No. 16) and "Plaintiff's Memorandum In Support Of Summary Judgment" (Document No. 17) were filed February 12, 2021; and "Defendant's Motion For Summary Judgment" (Document No. 20) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 21) were filed May 17, 2021. Plaintiff declined to file a reply brief, and the time to do so has lapsed. See Local Rule 7.2 (e).

The pending motions are now ripe for review and disposition.

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 6, 2017, and the date of his decision.[1] (Tr. 15-16). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 24-25).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since August 6, 2017, his alleged disability onset date. (Tr. 17). At the second step, the ALJ found that congestive heart failure ("CHF"); cardiomyopathy; osteoarthritis of the knees; obesity; diabetes; and hammertoes with hallux deformity were severe impairments.[2] Id. At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 18).

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work activity, with the following limitations:

> [T]he claimant would be limited to occasional climbing of ramps and stairs; never climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; avoiding more than occasional exposure to extreme heat or cold; avoiding all exposure to fumes, odors, dust, gases industrial chemicals and poorly ventilated areas; avoiding more than occasional exposure to extreme heat or cold, humid or outdoor environments or work environment containing exposure to wetness; and avoiding all exposure to unprotected heights, moving mechanical parts, and other workplace hazards.

(Tr. 19). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work as a press operator, warehouse worker, and machine fixer. (Tr. 24). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 25). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a small parts assembler, an electronics worker, and a cashier II. Id. Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 6, 2017, and the date of his decision, January 31, 2020. (Tr. 25-26).

Plaintiff on appeal to this Court contends that the ALJ erred by "failing to explain why he did not include an accommodation for above the heart LE elevation in the RFC." (Document No. 17, p. 3). The undersigned will discuss this contention below.

**Failure to Include Accommodation for Leg Elevation**

Plaintiff argues that while "the ALJ listed some of the evidence regarding [Plaintiff's] persistent LE edema in his decision, he does not then explain why the accommodation [for leg elevation] was not included in the RFC." Id. at 2 (citing Tr. 21). Plaintiff notes that "[t]he VE testified that if he had to elevate his legs above heart level for one to two hours during the workday, then he would be unemployable." (Document No. 17, p. 3) (citing Tr. 53).

In support of his argument, Plaintiff first relies on his own testimony. (Document No. 17, p. 3) (citing Tr. 41, 45-46, 53). Plaintiff notes that he "testified that he had ongoing trouble with swelling in his extremities." (Document No. 17, p. 3). Specifically, Plaintiff references his testimony that "[h]e elevated his legs twice per day to manage swelling – once when sleeping at night and also during the middle of the day when he lies down." Id. (citing Tr. 41). Plaintiff then argues that, despite the ALJ's acknowledgment of Plaintiff's edema in the medical record, "[t]here is no logical explanation connecting this evidence to the RFC which makes no allowance for leg elevation." (Document No. 17, p. 4-5) (citing Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019)).

Plaintiff posits that "the only statement the ALJ specifically makes about [Plaintiff's] LE edema is as follows: 'Regarding the claimant's bilateral lower extremity edema, objective testing on August 7, 2018, showed that the claimant had no evidence of deep vein thrombosis in the bilateral lower extremity.'" (Document No. 17, p. 5) (quoting Tr. 22 (citing Tr. 451-52, 454)). Plaintiff argues that "while testing for deep venous thrombosis ("DVT") is undergone to rule out other causes of LE edema," he alleged cardiomyopathy and heart failure, not DVT, as his impairments. (Document No. 17, p. 5) (citing Tr. 56 (quoting Tr. 451)). Relying on "medical literature," Plaintiff then claims that "heart failure is often the cause of LE edema." (Document

No. 17, p. 5) (first citing Tr. 370, 400, 405, 420, 423, 429, 532; and then citing Merck Manuals, Edema, https://www.merckmanuals.com/professional/cardiovascular-disorders/symptoms-of-cardiovascular-disorders/edema).

Plaintiff further argues that "the record does contain ample support for [his] testimony that LE edema was an ongoing struggle for him." (Document No. 17, p. 5). Plaintiff cites the record at length, including descriptions of his physical examinations, his ailments, and the impact of those ailments on his daily life. Id. at 5-7 (citing Tr. 310, 339, 454, 425, 370, 371, 376-77, 426, 427, 431, 422, 423, 419-20, 451, 439, 440, 450, 400, 403, 395, 504, 482, 488, 534, 535, 530, 533, 558, 560). For example, Plaintiff asserts that:

> On August 6, 2018, [Plaintiff] presented to the ER of the Veterans Affairs ("VA") hospital. He complained of edema in his legs for the past six to twelve months as well as SOB with exertion and laying down flat. AR 426. On PE, he displayed 3+ (severe) edema in his extremities and his X-ray was consistent with CHF and cardiomegaly; his EKG was positive for sinus tachycardia. AR 427. He also had pleural effusion in his lungs. AR 431. The next day [Plaintiff] underwent a cardiology consultation complaining that he could not lay flat, had developed leg swelling and complained of dyspnea upon exertion to use the bathroom. He had gained 100 pounds in the past six months. AR 420. On PE, he was noted to be morbidly obese, had an anxious affect, diminished air movement in all lung lobes, distant heart sounds and 2-3+ LE edema. AR 422. He was diagnosed with CHF and cardiomyopathy. AR 423.

(Document No. 17, p. 6).

After identifying evidence from the record purportedly establishing Plaintiff's ongoing struggle with LE edema, Plaintiff contends that "the ALJ did not explain why an accommodation for leg elevation was not included in the RFC despite [Plaintiff]'s testimony, the wealth of evidence describing his LE edema and the outcome determinative nature of this accommodation per the VE's testimony." Id. at 8 (citing Tr. 53). Plaintiff analogizes the present case to Hall v. Berryhill, where the court found "that the ALJ erred because he failed to 'explain why he did not include the

8

need for above-waist elevation or why claimant's testimony in that regard was not credible.'" (Document No. 17, p. 8) (quoting Hall v. Berryhill, 3:17-CV-285-MOC, 2018 WL 1463702, at *3 (W.D.N.C. Mar. 23, 2018)). Plaintiff contends that "where a claimant argues that an impairment limits their ability to work in a specific way, the ALJ must separately analyze that function or accommodation, specifically discussing the extent to which it limits their ability to work." (Document No. 17, p. 8) (citing Dowling v. Comm'r of Soc. Sec., 2021 WL 203371, at *7 (4th Cir. Jan. 21, 2021)). Plaintiff included the following language from that decision:

> [T]he ALJ apparently concluded that Appellant was not restricted in her ability to sit, as he did not indicate that her RFC was limited because of those problems. This conclusion should have been the result of an analysis that was separate from the ALJ's appraisal of Appellant's ability to perform other functions, and should have been accompanied by "a narrative discussion describing" the evidence supporting it. . . . The ALJ never specifically discussed the extent to which Appellant's alleged sitting problems impacted her ability to perform sedentary work. The ALJ could not have supported a conclusion in this regard through a narrative discussion concerning the relevant evidence because he reached no such express conclusion in the first instance.

(Document No. 17, p. 8-9) (quoting Dowling, 2021 WL 203371, at *7 (quoting Thomas, 916 F.3d at 311)).

In response, Defendant "emphasizes" that "Plaintiff not the Commissioner bears the burden of establishing [Plaintiff's] limitations." (Document No. 21, p. 4) (quoting Durham v. Saul, 3:20-CV-295-KDB, 2021 WL 1700353, at *5 (W.D.N.C. Apr. 29, 2021) (citing Hendrickson v. Berryhill, 1:16-CV-367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) (citing Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013)))). Defendant argues that Plaintiff has not satisfied his burden, but rather "cites his own allegations and evidence that merely establishes the severe impairments that are common ground." (Document No. 21, p. 4) (citing Document No. 17, p. 3-9).

Next, Defendant contends that "the ALJ's RFC finding satisfies the not-high substantial-evidence standard with respect to the lack of a specific limitation regarding the need to elevate the lower extremities during the workday," specifically noting the deference due to ALJ decisions under the relevant standard of review. (Document No. 21, p. 5).

Third, Defendant argues that Plaintiff has not established, or even alleged, "a specific functional limitation in excess of the ALJ's RFC finding." Id. Defendant points to Plaintiff's testimony that "he elevated his legs above heart level twice per day, once when he took a nap during the day and again when he got into bed at night." Id. (first citing Tr. 41; and then citing Document No. 17, p. 3). Defendant asserts that the alleged limitation "would not interfere with Plaintiff's ability to work during the day," and "there is no specific allegation or evidence that it would be insufficient for [Plaintiff] to [elevate his legs] before the workday, after the workday, and/or during normal breaks." (Document No. 21, p. 5) (citing Amavisca v. Berryhill, 5:18-CV-26-MOC, 2018 WL 5722663, at *7 (W.D.N.C. Nov. 1, 2018)).

In response to Plaintiff's argument that his alleged LE elevation limitation would preclude employment, Defendant argues that "Plaintiff has not established such a functional limitation," nor has he "pointed to hearing testimony or any place in the record where he alleged that he had to elevate his legs (above heart level) for any particular length of time." (Document No. 21, p. 5) (first citing Document No. 17, p. 8, 3; and then citing Tr. 53, 20).

Next, Defendant argues that Plaintiff's suggestion that his edema is caused by his heart failure is misplaced because "the records that Plaintiff cites have nothing to do with edema." (Document No. 21, p. 6) (citing Document No. 17, p. 5-6). Defendant notes that the ALJ discusses the records cited by Plaintiff, in addition to others, and that those records indicate that "Plaintiff

stopped working in July 2017 due to a sinus infection," rather than any heart-related condition. (Document No. 21, p. 6) (citing Tr. 400, 420-21).

Defendant's sixth argument contends that "the ALJ's explanation is sufficient to support his RFC finding and to facilitate meaningful judicial review." (Document No. 21, p. 7). Defendant argues that the ALJ's statement "that the claimant had no evidence of deep vein thrombosis in the bilateral lower extremity," coupled with his various citations to the record, sufficiently explain his RFC finding. Id. (quoting Tr. 22 (citing Tr. 451-52, 454)). Specifically, Defendant relies on the following three reasons:

> First, it appears that [Plaintiff] rightly acknowledges that the DVT testing that the ALJ cited is relevant. Second, the ALJ found congestive heart failure and cardiomyopathy (but not DVT) to have been severe impairments, in keeping with Plaintiff's allegations (see 17); and the ALJ properly analyzed those severe impairments, as partly discussed further below. Third, and most importantly, even taking as given Plaintiff's suggestion that his edema was caused by heart failure (see Pl. Br. 5), the ALJ explained that September 2019 "notes indicated that the claimant had not experienced signs and/or symptoms of heart failure in the past year" and "that the claimant's congestive heart failure was well managed" (Tr. 23, citing Tr. 556; see also Tr. 22).

(Document No. 21, p. 7).

Defendant notes that Plaintiff's heart failure was "well managed," and therefore, the edema allegedly caused by Plaintiff's heart failure "did not cause a functional limitation in excess of the ALJ's RFC finding." Id. at 7-8 (first citing Tr. 556; and then citing (Burr v. Berryhill, 5:17-CV-169-DCK, 2018 WL 3069177, at *5 (W.D.N.C. June 21, 2018) (quoting Gross v. Heckler, 785 F.3d 1163, 1166 (4th Cir. 1986)))).

Defendant further notes the ALJ's citation to "several pages in the record detailing Plaintiff's subjective complaints, including lower-extremity edema." (Document No. 21, p. 8) (citing Tr. 22 (citing Tr. 312, 326, 336, 370, 371, 394, 403, 413, 425, 426, 532, 55)). Defendant

11

then identifies numerous instances in which the ALJ cites portions of the record describing Plaintiff's generally normal physical examinations, such as the following:

> The claimant's physical examinations, however, were generally unremarkable. Despite the claimant's subjective complaints, his physical examinations generally showed that he was well developed and well nourished, he was in no acute distress, his cardiovascular and respiratory examinations were normal, his neck was supple, his abdomen was normal, his extremities were normal, he had no motor or neurologic deficit, and his gait was normal.

(Document No. 21, p. 8) (quoting Tr. 22 (citing Tr. 314–15, 338, 349, 357–58, 365, 395, 403, 408, 413, 422, 488, 494, 503–04, 535, 539, 545, 560)). The ALJ described a hospital stay in June 2018 for respiratory issues as follows:

> The claimant's physical examination showed he had an old moderate pitting edema in the distal lower extremities extending to the knees bilaterally. His physical examination, however, was otherwise unremarkable with no sensory or motor deficits. The claimant was assessed with mild tachycardia, vital signs were otherwise unremarkable. The notes indicated that chest x-ray w[as] consistent with congestive heart failure. The notes indicated that it was recommended that the claimant be admitted to the hospital, but he declined. The claimant preferred to follow up at the Veteran Affairs (VA).

(Document No. 21, p. 9) (quoting Tr. 21 (citing Tr. 370-85)). The ALJ observed that Plaintiff's March 2019 annual examination showed that:

> [O]verall, the claimant was feeling well, he had no loss of appetite, he had sufficient energy, he was sleeping well, and he was enjoying life. The claimant's physical examination showed that he had . . . tight bilateral edema. Otherwise, the claimant's physical examination was unremarkable with strength intact and normal muscle tone and bulk with sensation intact and with steady gait. The claimant was assessed with Type 2 diabetes mellitus, obesity, and GERD. The notes indicated that the claimant smoked daily. The claimant's treatment was conservative.

(Document No. 21, p. 10) (quoting Tr. 21 (citing Tr. 485-88)).

Defendant further notes that the ALJ cited the record to demonstrate "objective improvement in Plaintiff's heart functioning," specifically that "an echocardiogram on May 2, 2019, showed that claimant's ejection fraction had improved to 45-50%, which was an improvement from a prior study on August 7, 2018, which showed an ejection fraction that was less than 20%."  (Document No. 21, p. 10) (quoting Tr. 23 (citing Tr. 452; 419-20)).

Defendant distinguishes Hall v. Berryhill, noting that "the district court remanded [that case] because (1) the ALJ found a 'lift requirement without any support,' (2) there was in the ALJ's decision a 'complete lack of explanation' regarding that limitation, and (3) the ALJ 'disregarded plaintiff's testimony that she needed above the waist elevation, which found some support.'" (Document No. 21, p. 11) (citing Document No. 17, p. 8) (quoting Hall v. Berryhill, 3:17-CV-285-MOC, 2018 WL 1463702, at *3 (W.D.N.C. Mar. 23, 2018)).

In support of his contention that the ALJ's RFC explanation was sufficiently detailed, Defendant relies on Smith v. Saul, where the district court explained its decision to affirm as follows:

> [t]he ALJ provided three justifications for formulating an RFC less restrictive than Claimant's testimony: first, he concluded that she reported a level of restriction not entirely consistent with the medical evidence and other evidence in the record; second, he found that the record shows that Claimant received conservative treatment inconsistent with that one would expect for a disabled individual; and third, he noted that the record lacked any medical source statement providing opinion evidence supporting Claimant's alleged limitations.

(Document No. 21, p. 11) (quoting Smith v. Saul, 7:19-CV-118-RJ, 2020 WL 5578966, at *4 (E.D.N.C. Sept. 17, 2020)).  Defendant further argues that the above factors are satisfied in the present case:

> Regarding the first, the ALJ showed how the evidence is generally inconsistent with Plaintiff's testimony, although Plaintiff

13

> did not allege that he had to elevate his legs for a specific amount of time during the workday. Regarding the second, the ALJ accurately noted several times that Plaintiff's treatment was conservative. And, regarding the third, there is no medical opinion that would support a need to elevate the lower extremities during the workday. On the contrary, the ALJ properly found partially persuasive the February 2019 and May 2019 administrative findings of the State-agency medical consultants, Dr. Nisbet and Dr. Brown, who discussed edema but did not include a functional limitation regarding the need to elevate the lower extremities during the workday.

(Document No. 21, p. 11-12) (citing Tr. 23, 61-65, 84-88).

The undersigned finds Defendant's position more persuasive. In short, the undersigned agrees that the ALJ's RFC is supported by substantial evidence. (Document No. 21, p. 8-10). Moreover, Defendant persuasively notes that Plaintiff did not allege a specific limitation necessitating leg elevation for any particular length of time nor at any particular time of day. Id. at 5 (citing Tr. 41). "Plaintiff not only has not established a specific functional limitation in excess of the ALJ's RFC finding; he has not even alleged one." (Document No. 21, p. 5). Despite Defendant's persuasive arguments, Plaintiff declined the opportunity to respond.

The ALJ sufficiently supported his decision by citing evidence regarding the severity of Plaintiff's edema, records of Plaintiff's physical examinations, as well as the administrative findings of the State-agency medical consultants (neither of whom included a functional limitation regarding leg elevation) to support his conclusion. Id. at 7-12. The ALJ repeatedly noted that Plaintiff's examinations were "unremarkable," his "treatment was conservative," and that his "congestive heart failure was well managed." (Tr. 20-23). While the undersigned recognizes Plaintiff's disagreement with the ALJ's decision, there does not appear to be adequate support for reversing or remanding that decision.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 16) is **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 20) is **GRANTED**; and the Commissioner's determination is **AFFIRMED**.

**SO ORDERED**.

Signed: September 28, 2021

David C. Keesler
United States Magistrate Judge